Case 4:12-cv-00756-A   Document 24   Filed 11/04/13   Page 1 of 17   PageID 85

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| DEBRA RAMFIELD,<br> PLAINTIFF, | §<br>§<br>§ | |
| VS. | § | CIVIL ACTION NO. 4:12-CV-756-A |
| CAROLYN W. COLVIN, ACTING<br>COMMISSIONER OF SOCIAL SECURITY,<br> DEFENDANT. | §<br>§<br>§<br>§ | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**
**AND**
**NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

**FINDINGS AND CONCLUSIONS**

**I. STATEMENT OF THE CASE**

Plaintiff Debra Ramfield ("Ramfield") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). Ramfield applied for DIB on October 24, 2006, alleging that her disability began on December 15, 2004. (Transcript ("Tr.") 12, 244-49.) After her application for benefits was denied initially and on reconsideration, Ramfield requested a hearing before an administrative law judge ("ALJ"). (Tr. 12, 132-42.) The ALJ held a hearing on March 19, 2009, and issued a decision on May 13, 2009 denying Ramfield's application for benefits. (Tr. 12, 35-74, 115-27.) After Ramfield filed a

Request for Review, the Appeals Council, on October 30, 2010, issued an order in which it vacated the ALJ's prior decision and remanded the case to the ALJ for further administrative proceedings. (Tr. 12, 128-31.) The ALJ held another hearing on October 17, 2011, and he issued another unfavorable decision on December 7, 2011. (Tr. 8-26, 81-112.) On September 26, 2012, the Appeals Council denied Ramfield's request for review, leaving the ALJ's December 7, 2011 decision as the final decision of the Commissioner in Ramfield's case. (Tr. 1-3.) Ramfield subsequently filed this civil action seeking review of the ALJ's decision.

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, of the SSA and numerous regulatory provisions. *See* 20 C.F.R. Pt. 404. The SSA defines a "disability" as a "medically determinable physical or mental impairment" lasting at least twelve months that prevents the claimant from engaging in "any substantial gainful activity." 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 416.920(a)(4). First, the claimant must not be presently working at any substantial gainful activity. *Id.* § 416.920(b). "Substantial gainful activity" is defined as work activity "that involves doing significant physical or mental activities . . . for pay or profit." *Id.* § 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. *Id.* § 416.920(c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment contained in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 416.920(d). Fourth, if disability cannot be found on the basis of the

claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 416.920(f). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 416.920(g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show that he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III. ISSUES

In her brief, Ramfield presents the following issue: Whether the ALJ's residual functional capacity assessment ("RFC") was supported by substantial evidence. (Plaintiff's Brief ("Pl.'s Br.") at 1.)

## IV. ALJ DECISION

In his December 7, 2011 decision, the ALJ first found, *inter alia*, that Ramfield had not engaged in any substantial gainful activity since her onset date of disability and that she met the disability insured status requirements of the SSA through March 31, 2010. (Tr. 11.) At Step Two, the ALJ found that Ramfield suffered from the following severe combination of impairments: "chronic obstructive pulmonary disease ("COPD"), asthma, obesity, obstructive sleep apnea, hypothyroidism, restless leg syndrome, depression, anxiety, degenerative changes in the thoracic and lumbar spine, degenerative changes in the cervical spine status post two-level fusion, bilateral carpal tunnel syndrome, and polycythemia."[1] (Tr. 13.)

At Step Three, the ALJ found that Ramfield did not suffer from an impairment or combination of impairments that met or equaled any section in the Listing. (Tr. 13.) The ALJ then determined that Ramfield had the following RFC:

> [L]ift, carry, push, and pull twenty pounds occasionally and ten pounds frequently; sit throughout an eight-hour workday; and stand and walk (individually or in combination) two hours in an eight-hour workday; and otherwise perform the full range of light work,[2] except: she could not climb ladders, ropes, or scaffolds; she could only occasionally stoop; and she required a generally clean environment and therefore had to avoid concentrated exposure to airborne contaminants (such as dust, fumes, and mold), high humidity, and extreme heat, but working in a normal office environment was allowed.

---

[1] In a footnote, the ALJ stated, "I stress that the *combination* of impairments is 'severe,' not that each impairment is 'severe.'" (Tr. 13 (emphasis in original).)

[2] Pursuant to the regulations, light work is defined as follows:

Light Work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

(Tr. 25 (footnote inserted).) Relying on these RFC assessments, the ALJ opined that Ramfield was able to perform her past relevant work as a loan processor and as a loan officer. (Tr. 25.) Consequently, the ALJ found that Ramfield was not disabled. (Tr. 25.)

## V.  DISCUSSION

### A.  RFC and Substantial Evidence

Ramfield argues that the ALJ's RFC assessment is not supported by substantial evidence. (Pl.'s Br. at 1, 11.) Specifically, Ramfield claims that the ALJ's RFC findings were deficient because he failed to incorporate limitations relating to Ramfield's use of her hands. (Pl.'s Br. at 12-14.) In addition, Ramfield argues that the ALJ's finding that there was no objective evidence that supported Ramfield's claims of pain in her extremities was erroneous. (Pl.'s Br. at 14-16.)

RFC is what an individual can still do despite her limitations.[3] SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do but the most. *Id.* The RFC is a function-by-function assessment, with both extertional and nonexertional[4] factors to be considered, and is based upon all of the relevant evidence in the case record. *Id.* at *3–6. The responsibility for determining a

---

[3] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

[4] Exertional capacity addresses an individual's ability to "perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023–24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. § 416.929; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* 20 C.F.R. § 416.929; SSR 96-7p, WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p at *5. The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security rulings also caution that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7C, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.").

### 1. Failure to Incorporate Limitations Relating to Ramfield's Hands

As stated above, Ramfield claims, in essence, that the ALJ erred by finding at Step Two[5] that her carpal tunnel syndrome was a severe impairment but then failing to include any

---

[5] To evaluate whether a claimant's medical condition qualifies as a "severe impairment" at Step Two of the analysis, the Commissioner has issued regulations that define a "severe impairment" as one that "significantly limits

6

limitations in the RFC determination relating to Ramfield's manipulative limitations. (Pl.'s Br. at 12.) Ramfield claims that there is evidence in the record that shows the following: (1) treatment notes dated in 2007 showing Ramfield suffered from numbness and tingling in her hands; (2) a diagnosis by Patrick Conway, D.O. ("Dr. Conway"), in 2008 that Ramfield had arthritis in her left hand and continued numbness in her fingers; (3) a July 2008 nerve conduction study that showed "evidence of bilateral median sensory neuropathy and right median motor neuropathy of the wrist with left median motor conduction slowing in the forearm;" (4) an August 2008 and April 2009 diagnosis by Karen Perl, D.O. ("Dr. Perl") that Ramfield suffered from "bilateral median neuropathy consistent with carpal tunnel syndrome;" and (5) a July 2010 nerve conduction study that indicated findings "consistent with bilateral median neuropathy." (Pl.'s Br. at 13.) Ramfield argues that, if the ALJ had considered such evidence, "his RFC determination might have included limitations on Ramfield's ability to use her hands for manipulative movements." (Pl.'s Br. at 14.) In addition, Ramfield claims that, "[h]ad the ALJ included such limitations in the hypothetical to the vocational expert, a different determination might have been reached as to Ramfield's ability to perform the job of loan processor, given the ALJ's recognition of Ramfield's testimony that she 'typed all day long' in her job as loan processor." (Pl.'s Br. at 14.)

In this case, as set forth above, the ALJ found at Step Two that Ramfield had a severe combination of impairments that included bilateral carpal tunnel syndrome. (Tr. 13.) In the RFC

---

[a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c); cf. id. §§ 404.1521(a), 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). The Fifth Circuit, however, has held that a literal application of that definition is inconsistent with the statutory language and legislative history of the SSA. See Stone, 752 F.2d at 1104–05. Instead, the Fifth Circuit has established the following standard for determining whether a claimant's impairment is severe: An impairment is not severe only when it is a "slight abnormality" having "such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." Id. at 1101 (emphasis added).

determination, the ALJ found that Ramfield had the RFC to perform the full range of light work except that she could not climb ladders, ropes, or scaffolds, could only occasionally stoop, and required a generally clean working environment. (Tr. 25.) In making such a determination, the ALJ stated the following, *inter alia*, as to Ramfield's hands:

> When Ms. Ramfield presented in September 2009, she complained of neck and upper shoulder pain, bilateral forearm numbness that was more pronounced on the left, and weakness in her right (dominant) upper extremity. She denied manual dexterity issues. . . . [S]he had a normal gait, normal tandem walk, and 5/5 strength in her grip and upper extremities. There was no evidence of atrophy or abnormal sensation in her upper extremities. Her impingement, Phalen's, Tinel's, and Spurling's signs were all negative. . . .
>
> In July 2008 Ms. Ramfield had EMG and nerve conduction studies of her bilateral upper extremities due to her complaints of numbness and tingling in her hands and digits for the preceding one to two years. The claimant also complained of difficulty with balance, vertigo, and coordination at that time. Testing was consistent with mild carpal tunnel syndrome bilaterally. Wrist splints and occupational therapy were recommended. Ms. Ramfield had additional testing in July 2010, approximately four months after her date last insured, for complaints of burning and tingling in the first three digits of both hands. Testing again revealed bilateral carpal tunnel syndrome. Testing was negative for ulnar neuropathy and for cervical radiculopathy.
>
> . . . .
>
> At the March 2009 hearing, Ms. Ramfield testified as follows: . . . .
>
> . . . .
>
> She had an EMG that was positive for carpal tunnel, which affects her hands at different times. It is difficult for her to write and move her hands, and she has constant pain in her hands, as well as tingling. Her hands become fatigued, swollen, numb, and painful. She cannot bend her hands now. Surgery has not been recommended, but that will be the next step. She was told to delay carpal tunnel surgery because the steroids and Prednisone might help. Although steroids do help, they do not last long, and her symptoms recur. With pain medication, her hand pain is a six on a one-to-ten scale.
>
> She has a nerve problem that makes her hands shake and jerk. . . .
>
> . . . .

8

> Ms. Ramfield appeared at the October 2011 hearing with a cane and testified as follows: . . . .
>
> She was born in 1959 and has a general equivalency diploma. She is 5'1" tall, weighs 191 pounds, and is right-handed. . . .
>
> She has carpal tunnel in both hands that physical therapy did not help. Her hands go numb and stiffen, and her pain radiates into her arms. She cannot straighten her fingers. She takes Meloxicam as an anti-inflammatory. Because she has been dealing with her spinal issues and trying to deal with one thing at a time, she has not had carpal tunnel surgery.
>
> . . . .
>
> Despite her testimony as to significant hand symptoms, Ms. Ramfield had only mild carpal tunnel syndrome bilaterally. She denied manual dexterity problems in September 2009, at which time she had 5/5 grip strength and negative Phalen's and Tinel's signs. There was no objective evidence of a nerve problem that could have caused shaking and jerking in her hands. There was no objective evidence of neuropathy on testing, even though Dr. Conway diagnosed neuropathy (apparently based on the claimant's subjective complaints), and even though he prescribed medications for neuropathy. Given, the medical evidence, I found that neuropathy is not a medically determinable impairment.
>
> . . . .
>
> . . . . I considered her carpal tunnel syndrome in limiting her ability to lift, carry, push, and pull. However, given the evidence discussed above, I found that she did not have manipulative limitations.

(Tr. 17-24 (internal citations omitted).)

As to Ramfield's claim that it was, in essence, inconsistent for the ALJ to find at Step Two that Ramfield had a severe impairment of carpal tunnel and then not include any limitations in the PRFC to account for such syndrome, the Court notes that "having a severe impairment is not a sufficient condition for receiving benefits under the Secretary's regulations," but "means only that claimant has passed the second step of the inquiry mandated by the regulations." *Shipley v. Sec. of Health & Human Servs.*, 812 F.2d 934, 935 (5th Cir. 1987). In other words, the consideration of whether a claimant's impairments are severe at Step Two is a different inquiry

than an ALJ's assessment of the claimant's RFC. *See Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289, at *9 (5th Cir. Aug. 19, 2005) ("A claimant is not entitled to social security disability benefits merely upon a showing that she has a severe disability. Rather, the disability must make it so the claimant cannot work to entitle the claimant to disability benefits."); *Boyd v. Apfel*, 239 F.3d 698, 706 (5th Cir. 2001) ("The ALJ's finding that [the claimant] had a 'combination of impairments that is severe' did not foreclose a finding that [the claimant] had a residual functional capacity to perform a range of light work, and is not necessarily inconsistent with that finding."); *Quigley v. Astrue*, No. 4:09-CV-402-A, 2010 WL 5557500, at *8 (N.D. Tex. Sept. 8, 2010).[6]

In this case, it is clear that the ALJ considered Ramfield's hand impairments at Step Two and in the RFC determination. Contrary to Ramfield's claims, the ALJ did consider, either explicitly or implicitly, all the evidence in his decision that Ramfield claims the ALJ failed to consider. As to the treatment notes from 2007, although the ALJ did not specifically mention Ramfield's complaints that she suffered from numbness and tingling in her hands, the ALJ did specifically discuss such notes in conjunction with pulmonary function testing. (Tr. 15.) As to the diagnosis by Dr. Conway of arthritis in Ramfield's left hand and of continued numbness, the ALJ analyzed the July 2008 nerve study in his decision and such study appears to have been ordered by Dr. Conway as a result of his June 2008 diagnosis of arthritis. (Tr. 18; *see* Tr. 660-63, 666, 916-21.) In addition, the ALJ considered the July 2010 nerve conduction study, specifically noting that this study was negative for ulnar neuropathy. (Tr. 18; *see* Tr. 902-03.) As to Dr. Perl's August 2008 and April 2009 treatment notes that contained the diagnoses of bilateral median neuropathy consistent with carpal tunnel syndrome, while the ALJ did not

---

[6] *But see Martinez v. Astrue*, No. 2:10-CV-0102, 2011 WL 4128837, at *7 (N.D. Tex. Sept. 9, 2011); *Norman v. Astrue*, No. SA-10-CA-849-XR, 2011 WL 2884894, at *5 (W.D. Tex. July 18, 2011);

directly mention such diagnoses, he did specifically consider the treatment notes. (Tr. 16; *see* Tr. 762-63, 819).

Based upon other evidence in the record, as set forth above, the ALJ found that Ramfield was capable, *inter alia*, of performing light work and that any limitations relating to her carpal tunnel syndrome were included in the limitations on her ability to lift, carry, push, and pull. (Tr. 24.) Thus, contrary to Ramfield's claims, the ALJ did include some limitations relating to her bilateral carpal tunnel syndrome and hand issues into the RFC determination. Substantial evidence supports the ALJ's decision in this regard. An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollins v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009) (citations omitted).

As to Ramfield's claims that the ALJ erred in stating that there was no evidence that indicated she suffered from neuropathy, the Court agrees that such statement does appear incorrect as there is some evidence in the record indicating that Ramfield did suffer from bilateral median neuropathy.[7] (*See, e.g.*, Tr. 661, 762-63, 819, 903, 916-17.) However, bilateral median neuropathy appears to be related to carpal tunnel syndrome, which the ALJ did find Ramfield suffered from and thoroughly discussed. *See, e.g., Wilson v. Hunter*, No. 04-2424, 2006 WL 2403993, at *4 n.16 (E.D. La. Aug. 17, 2006) ("Carpal Tunnel Syndrome is a type of compression neuropathy (nerve damage) caused by compression and irritation of the median nerve in the wrist where the nerve is compressed within the carpal tunnel, a bony canal in the palm side of the wrist that provides passage for the median nerve to the hand."). Moreover,

---

[7] If the ALJ was referring to ulnar or radial neuropathy, then his statement would be correct as it does not appear that there was any evidence that Ramfield suffered from this type of neuropathy. (*See, e.g.*, Tr. 903.)

11

procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (stating that ALJ's omission does not require remand unless it affected claimant's substantial rights).

In this case, although the ALJ's written findings are not perfect, the ALJ ultimately determined, based on substantial evidence in the record, that Ramfield had the RFC to perform light work with certain restrictions. The ALJ clearly considered Ramfield's hand limitations in making such a determination and discussed the medical and other evidence in the record relating to Ramfield's hands. The ALJ is not required to include limitations in the RFC determination that are not supported by the evidence in the record. Based on the specific facts in this case, it is clear that the ALJ discussed (1) the evidence in the record in making his RFC determination, (2) adequately explained the reasoning for such determination and for giving less weight to certain evidence, and (3) exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). Because there is substantial evidence in the record that supports the ALJ's RFC determination, the Court concludes that remand is not required.

### 2. Extremity Pain

Ramfield also argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ erroneously rejected Ramfield's allegations of extremity pain and a pinched nerve "because the record did not contain objective evidence of an abnormality that could have resulted in such pain." (Pl.'s Br. at 14; *see* Tr. 23.) Ramfield claims that "the record contains diagnoses and evidence which confirm the presence of medically determinable

conditions that could account for her extremity pain, numbness, and weakness." (Pl.'s Br. at 14.) Ramfield asserts that the following evidence in the record supports her claims of extremity pain: (1) Dr. Perl's diagnosis in June 2008 that Ramfield suffered from radiculopathy based on the results of a nerve conduction study (Pl.'s Br. at 15; *see* Tr. 727-28); (2) the fact that Dr. Perl performed multiple epidural injections on Ramfield's back and offered post-operative diagnoses of radicular pain and lumbar radiculitis (Pl.'s Br. at 15; *see* Tr. 831, 849-50); (3) an examination by Dr. Perl that revealed a three-millimeter disc protrusion, painful range of motion flexion, and positive straight leg raising (Pl.'s Br. at 15; *see* Tr. 818-19); and (4) the fact that Ramfield had been diagnosed with cervical stenosis and lumbar spondylosis (Pl.'s Br. at 15). Ramfield argues that "[d]espite the foregoing evidence, the ALJ made his own medical conclusions about whether a patient would show signs of extremity pain or atrophy or muscle tone loss as a result of Ramfield's alleged impairments." (Pl.'s Br. at 15.)

In evaluating a claimant's subjective complaints, the ALJ first considers whether there is a medically determinable impairment that could reasonably be expected to produce the claimant's pain or other symptoms. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996). Once the impairment is found, the ALJ evaluates the intensity, persistence and limiting effects of the symptoms on the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96-7p, 1996 WL 374186, at *1. "Credibility determinations by an ALJ are entitled to deference." *Alexander v. Comm'r of Soc. Sec. Admin.*, No. 3:07-CV-1749, 2008 WL 4791319, at *12 (N.D. Tex. Oct. 30, 2008) (citing *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991)). Pursuant to SSR 96-7p, "[i]n determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms,

13

statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." SSR 96-7p, 1996 WL 374186, at *1.

In this case, contrary to Ramfield's arguments, the ALJ thoroughly considered Ramfield's allegations of extremity pain. (*See, e.g.*, Tr. 14, 16-17, 19-24.) In addition, the ALJ, in his sixteen page decision, thoroughly reviewed the medical evidence in a record that was almost 1,350 pages long. In making his credibility determination regarding Ramfield's allegations of pain, the ALJ, *inter alia*, stated:

> The claimant's allegations regarding her level of pain, subjective complaints, and functional limitations had minimal credibility and were not reasonably supported by the findings of the objective medical evidence and the inferences therefrom.
>
> I considered the element of pain in assessing Ms. Ramfield's [RFC] for work, and I evaluated her subjective complaints in compliance with 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p. In addition, I considered the claimant's good work history and information and observations by her treating and non-treating physicians, as well as by third parties.
>
> . . . .
>
> In reviewing the credible evidence and the relevant factors I am to consider, I recognized Ms. Ramfield's impairments may have resulted in some level of pain and functional loss. However, even moderate levels of pain and functional loss are not, in and of themselves, incompatible with the ability to perform certain levels of sustained work activity. In this case, neither the objective medical evidence, Ms. Ramfield's allegations, nor the other evidence establishes the claimant was so limited as to be found disabled. I note many of the claimant's subjective complaints were out of proportion to the objective findings on diagnostic studies and on physical examinations.
>
> . . . .
>
> Despite the abnormalities on her lumbar MRI's, and despite the finding of a right S1 radiculopathy on her EMG, Ms. Ramfield remained neurologically intact clinically. There was an isolated notation in her physical therapy records as to an inability to fully raise her right foot and as to somewhat reduced strength in the right leg. However, other records show the claimant maintained a normal gait. Although she was using a cane in October 2011, it was not prescribed.

>Furthermore, she reported significant improvement in her radicular symptoms lasting up to twelve weeks following injections. Ultimately, however she required a percutaneous discectomy. Nonetheless, her most recent MRI's (in September 2009 and July 2011) showed indentation of the thecal sac at L5-S1 but only minimal/mild neural foraminal stenosis and mild right lateral recess stenosis. In fact, the July 2011 MRI specifically stated that there was no evidence of neural impingement or stenosis. The claimant declined surgery as recently as August 2011, stating she wanted to manage her back conservatively. (Exhibit 62F, page 2.)
>
>Despite the abnormalities on her cervical MRI's, Ms. Ramfield also remained neurologically intact in her upper extremities both pre- and post-operatively, except for a noted loss of sensation in the C5 through C7 dermatomes post-operatively. Her EMG's were negative for cervical radiculopathy. Her cervical impairment required more extensive treatment, culminating in a two-level fusion. Diagnostic studies taken after surgery showed only very minimal stenosis at C4-5.
>
>Thus, there was no evidence of pinched nerves in her spine post-operatively, despite the claimant's testimony. There was no objective evidence on diagnostic studies of an abnormality that could have resulted in radicular pain into her extremities, despite her testimony. I note that despite the allegation of disabling pain and significant inactivity for years, the claimant never exhibited atrophy in any extremity.
>
>. . . .
>
>In summary, many of Ms. Ramfield's subjective complaints were grossly out of proportion to objective findings on diagnostic studies and on physical examinations. Many of her allegations were not supported by the objective medical evidence. Given the failure of the objective medical evidence to support many of the claimant's subjective complaints and allegations, I found that her allegations as to her symptoms and limitations were only minimally credible. The intensity and persistence of her purposed pain and other symptoms were not consistent with the medical evidence.

(Tr. 19, 22-24.)

In this case, the ALJ did consider all the evidence referenced by Ramfield that she claims supports her claims of extremity pain and a pinched nerve. (*See* Tr. 16.) In addition, the ALJ considered a vast amount of other medical evidence in the record. The ALJ did not actually reject Ramfield's allegations of pain, as claimed by Ramfield. Instead, the ALJ found such

15

allegations "minimally credible." In making such a determination, the ALJ explained his reasons for doing so, explaining that the objective medical evidence did not support Ramfield's allegations of extremity pain.[8] As stated above, it is the role of the ALJ, not the Courts, to resolve any evidentiary conflicts and make credibility determinations.[9] The ALJ performed such role and ultimately decided, based on evidence in the record, that Ramfield's allegations of pain were minimally credible. Because the ALJ performed his role as required and such determination was supported by substantial evidence, the Court concludes that remand is not required as to this issue.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. See 28

---

[8] The ALJ also pointed out other reasons that made him question the complete veracity of Ramfield's testimony, including evidence discounting Ramfield's claims that she stopped smoking in 2004. (Tr. 15, 23; see Tr. 696.)

[9] Ramfield also argues that the ALJ should have obtained a medical source opinion regarding whether Ramfield could perform light work as there was no medical evidence opinion that addressed Ramfield's functional limitations due to extremity pain. However, there is a Physical Residual Functional Capacity Assessment ("PRFCA") in the record dated March 29, 2007 and referenced by the ALJ that finds that Ramfield can perform, in essence, light work in spite of her alleged impairments. (See Tr. 486-93.) In the PRFCA, State Agency Medical Consultant Moira Dolan, M.D., states that Ramfield's "allegations are partially supported but not l[i]miting to the the [sic] degree alleged by" Ramfield. (Tr. 491.)

U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

### **ORDER**

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **November 15, 2013**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED November 1, 2013.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv